[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-14654
Non-Argument Calendar
_____

Agency Nos. A96-151-130,
A96-151-131

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 1, 2009
THOMAS K. KAHN
CLERK

GISELA ROSAS SALAS,
EDGAR EDUARDO DUQUE GALVIS,
STEFHANIE GISELLE DUQUE ROSAS,
a.k.a. Stephanie Giselle Duque Rosas,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(April 1, 2009)

Before HULL, WILSON and FAY, Circuit Judges.

PER CURIAM:

Gisela Rosas Salas petitions for review of the Board of Immigration Appeals's ("BIA") decision affirming the Immigration Judge's ("IJ") order (1) denying as untimely her asylum application and (2) denying withholding of removal and relief under the United Nations Convention Against Torture ("CAT"). After review, we dismiss in part and deny in part the petition.

## I. BACKGROUND

On July 3, 2001, Salas and her husband and daughter, citizens of Colombia, entered the United States on tourist visas with authorization to stay until July 2, 2002. Salas and her family remained in the United States past the authorized 2002 date.

Approximately three years later, on July 13, 2005, Salas filed her application for asylum, withholding of removal and CAT relief, asserting that the National Liberation Army of Colombia ("ELN") had persecuted her based on her political opinion and membership in a particular social group.[1] On August 19, 2005, the Department of Homeland Security ("DHS") issued a Notice to Appear, charging Salas with removability, pursuant to Immigration and Nationality Act ("INA") §

---

[1]Salas's husband and daughter are listed in the application as derivative beneficiaries. Although our opinion refers to Salas, our ruling as to the asylum claim applies equally to Salas's husband and daughter. As to the claim of withholding of removal, "there are no derivative benefits associated with the grant of withholding of removal." Delgado v. U.S. Att'y Gen., 487 F.3d 855, 862 (11th Cir. 2007). Thus, we deny the petition as to her family's claim of withholding of removal on that basis.

237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B), for remaining in the United States without authorization.

Salas appeared before the IJ with counsel and conceded removability. According to her hearing testimony and application, Salas began receiving threatening phone calls and letters from the ELN after ELN members stopped her car. In October 2000, she and her family were on a trip to the beach when they encountered ELN members at a roadblock. When the ELN members learned Salas was a dentist, they suggested she assist them by working for them as a dentist in the mountains. The ELN also noted that Salas's husband worked for an American company. Salas and her family were allowed to leave when another car approached that the ELN wanted to stop.

In January 2001, upon returning from a family trip to the United States, Salas discovered a letter delivered to her home. The letter stated that the ELN had verified personal information about Salas and her family, including where Sala's daughters attended school, and invited Salas to join the group and make contributions to the group. Salas also received numerous telephone calls from the ELN demanding money and threatening to kidnap, torture and kill her family. In addition, Salas's father received a letter from the ELN stating that Salas and her family were military targets.

As a result of these threats, on July 3, 2001, Salas and her family entered the

United States. Since her departure, Salas has continued to receive calls and letters at her former home in Colombia from the ELN demanding money and threatening to harm Salas and her family. In December 2004, Salas's father, who remains in Colombia, received a letter from the ELN noting that he had sold his farm and demanding that he bring the proceeds to a particular location to give to them and threatening to kill him if he went to the police. Salas's father could not pay the money and seldom left his home for fear of being kidnaped or killed. In addition, Salas's sister-in-law's husband was killed for refusing to cooperate with the ELN.

Salas included in the record copies of letters sent to her and her father from the ELN, threatening her and her family and demanding money. Also in the record were numerous reports about Colombia indicating, inter alia, that: (1) as of 2003, internal armed conflict remained widespread, but peace negotiations were ongoing between the government and the guerilla groups; (2) guerilla groups target civilians for kidnaping, killing and extortion; and (3) ransom payments for kidnaped civilians and "war taxes" are an important source of revenue for guerilla groups.

After the hearing, the IJ denied all relief. The IJ found that Salas's asylum application was untimely and that no changed personal circumstances or extraordinary circumstances justified her failure to file her asylum application within one year of her arrival in the United States. As to her claim of withholding of removal, the IJ concluded that she had not shown past persecution or a well-

4

founded fear of future persecution and had not shown a nexus between the threats and her political opinion or membership in a particular social group.  As for her CAT claim, the IJ concluded that Salas had not shown that the Colombian government would torture her if she returned.

On appeal, the BIA affirmed and adopted the IJ's order.  The BIA agreed that: (1) Salas's asylum application was untimely; (2) Salas had not demonstrated past persecution or a well-founded fear of future persecution because the threats she received did not rise to the level of persecution; (3) Salas had not shown that the ELN's extortionate demands were motivated by one of the statutorily protected grounds; and (4) Salas had not shown that she would more likely than not be tortured by the government if she returned to Colombia.  Salas filed this petition for review.

## II.  DISCUSSION

### A.    Timeliness of Asylum Application

Salas argues that the IJ and the BIA erred in finding that she failed to show changed or extraordinary circumstances that would waive the one-year time limit for filing her asylum application.  We do not have jurisdiction to review this determination.  See INA § 208(a)(3), 8 U.S.C. § 1158(a)(3); Fahim v. U.S. Att'y Gen., 278 F.3d 1216, 1218 (11th Cir. 2002).

Salas argues that we retain jurisdiction to review the determination because

INA § 242(a)(2)(B), 8 U.S.C. § 1252(a)(2)(B), as amended by the REAL ID Act of 2005, Pub. L. No. 109-13, § 106(a), 119 Stat. 231, allows review of constitutional claims and questions of law. However, this Court has concluded that "[t]he timeliness of an asylum application is not a constitutional claim or question of law covered by the REAL ID Act's changes." Chacon-Botero v. U.S. Att'y Gen., 427 F.3d 954, 957 (11th Cir. 2005). Accordingly, we dismiss Salas's petition for review as to her asylum claim.

**B.     Withholding of Removal and CAT Relief**

An alien seeking withholding of removal must show that her "life or freedom would be threatened in that country because of [her] race, religion, nationality, membership in a particular social group, or political opinion." INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A). In other words, the alien bears the burden to show either that she has suffered past persecution on account of a protected ground or that she "more likely than not" will be persecuted on account of a protected ground if returned to her country. Tan v. U.S. Att'y Gen., 446 F.3d 1369, 1375 (11th Cir. 2006) (quotation marks omitted).

"Persecution on account of . . . political opinion . . . is persecution on account of the victim's political opinion, not the persecutor's." Sanchez v. U.S. Att'y Gen., 392 F.3d 434, 437-38 (11th Cir. 2004) (quotation marks omitted). Thus, to establish persecution by a guerilla group on account of political opinion, it

6

is not enough to show that the petitioner has been or will be targeted "due to her refusal to cooperate with the guerillas"; instead, the alien must show that the guerillas have targeted or will target her because of her actual or imputed political opinion. Id. at 438. In addition, evidence of private acts of violence or criminal activity do not demonstrate persecution on a protected ground. Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1258 (11th Cir. 2006). Thus, persecution by a guerilla group for refusing to make extortion payments or pay "war taxes" is not persecution on account of a protected ground. See Rivera v. U.S. Att'y Gen., 487 F.3d 815, 821-22 (11th Cir. 2007).[2]

Here, the record does not compel the conclusion that Salas was or would be persecuted on account of her political opinion.[3] In fact, the record indicates that Salas was targeted by the ELN because she refused to cooperate with them by providing dental services or giving them money. Salas's argument that she refused

---

[2]Where, as here, the BIA expressly adopts the IJ's order, we review the decisions of both the IJ and the BIA. Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). We review the factual determinations regarding whether an applicant is eligible for withholding of removal under the substantial evidence test. Al Najjar, 257 F.3d at 1283-84. Under the substantial evidence test, we can reverse a fact finding "only when the record compels reversal; the mere fact that the record may support a contrary conclusion is not enough to justify reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc).

[3]We lack jurisdiction to review Salas's claim that, as a dentist, a wife of an employee of an American company and a mother of an only child, she was a member of "a particular social group." Salas did not exhaust these issues before the BIA. See Amaya-Artunduaga v. U.S. Att'y Gen., 463 F.3d 1247, 1250 (11th Cir. 2006). Thus, we dismiss Salas's petition with respect to her claim that she was persecuted on account of her membership in a particular social group.

to cooperate with the guerillas because she disagrees with their political philosophy is unavailing. It is not her motivation for refusing to cooperate that matters, but the ELN's motive for targeting her. See id. at 822-23 (explaining that an alien's refusal to cooperate with guerillas on political grounds is not sufficient to show the required nexus because it is the guerilla group's motives and not the alien's motives that are relevant). There is no evidence in the record that the ELN knew of or cared about Salas's political opinion or imputed a political opinion to her, let alone were motivated by her political opinion to threaten her.[4]

Finally, the evidence does not compel a conclusion that the Colombian government would torture Salas or acquiesce to her being tortured if she was returned to Colombia. See Reyes-Sanchez v. U.S. Att'y Gen., 369 F.3d 1239, 1242 (11th Cir. 2004). Accordingly, we deny the petition as to Salas's CAT claim.

**DISMISSED IN PART AND DENIED IN PART.**

---

[4]Alternatively, substantial evidence supports the IJ's finding that the ELN's verbal threats do not rise to the level of persecution. See Silva v. U.S. Att'y Gen., 448 F.3d 1229, 1237 (11th Cir. 2006); Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1231 (11th Cir. 2005);